## In re MELLEN'S ESTATE.

(Supreme Court, General Term, First Department.　January 13, 1893.)

1. ACCOUNTING BY EXECUTORS—EVIDENCE OF INDEBTEDNESS.

On an appeal from a decree of the surrogate on the report of a referee, charging plaintiff, in the settlement of his account as executor of the estate of M. with certain notes given by plaintiff to M., the signatures to which were erased, and which were alleged by plaintiff to have been canceled by M. before his decease, it appeared that plaintiff, his father, M., and one T. were co-partners in business, the capital being furnished by M.; that these notes, representing plaintiff's indebtedness to the firm, were given by plaintiff to M. in exchange for M.'s demand note; and that upon the delivery of the demand note plaintiff's indebtedness was charged to the account of M.　An employe of the firm testified that plaintiff, in his presence, after M.'s decease. took the notes from a safe, to which plaintiff had had access, and broke the seal from the envelope which inclosed them, and that, in his "best impression," the signature to the notes was not erased.　*Held,* evidence sufficient to warrant the referee in finding that the notes were chargeable to plaintiff in the settlement of his accounts.

2. SAME—RES JUDICATA.

On an appeal from the decree of the surrogate, entered upon the report of a referee, charging plaintiff, as administratrix of J., one of the executors of the estate of M., with certain promissory notes given by J. to M., which notes were alleged by plaintiff to have been canceled and discharged by M. before his decease, the exclusion was proper of an interlocutory judgment in another action, brought by plaintiff personally, that there was a gift by M. to J. of these notes; the actions not being brought by the same parties, or their privies.

Appeal from surrogate's court, New York county.

Appeal by Sarah E. Mellen, as administratrix of Abner Mellen, Jr., accountant, from a decree of the surrogate upon the judicial settlement of Abner Mellen, Jr.'s, accounts as one of the executors of the will of Abner Mellen, deceased.　Affirmed.

For reports of other litigation involving this estate, see 9 N. Y. Supp. 929; 16 N. Y. Supp. 191, 887; 17 N. Y. Supp. 866; 18 N. Y. Supp. 515, 937, mem.; 19 N. Y. Supp. 1001.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

Henry Daily, Jr., for appellant.

George Hill, for respondent.

BARRETT, J.　The contest in the surrogate's court was confined chiefly to the liability of the accountant to his father's estate for a sum of $77,000, represented by nine promissory notes.　These notes were given by the accountant to his father in exchange for a single demand note for $77,000.　This demand note represented the accountant's indebtedness to the firm of Mellen & Co., composed of himself, his father, and one Taylor; and this indebtedness was, upon the delivery of such demand note, transferred or charged to the account of Mr. Mellen, Sr., who was the capitalist of the concern.　The present claim of the accountant is that these nine notes were subsequently discharged by Mr. Mellen, Sr., and that Mr. Mellen, Jr., was relieved from their payment; in other words, that his father forgave him the debt, and permitted the notes which represented the debt to be canceled.　The referee appointed by the surrogate to hear and determine this question, as well

as all other questions arising upon the settlement of the account, has found against this claim of the accountant. He finds, on the contrary, that these nine promissory notes are valid and subsisting obligations, and form part of the assets of the estate of the decedent, and that no part of the debt represented thereby has been paid. This finding negatives the claim of a gift, and substantially holds that the cancellation of the notes was the unauthorized act of the accountant after his father's death. It seems that these notes were placed in a sealed envelope, and that this envelope, thus sealed, was then placed in a small safe in the office of the firm. To this safe the accountant had access. After the death of Mr. Mellen, Sr., the envelope was taken out of the safe by the accountant, the seal broken, and the notes taken out of the envelope. This was done in the presence of one Ellis, a former employe of the firm, who was examined as a witness, and who testified that he then looked at the notes, and did not observe that the name of the accountant had been erased. This witness was not positive as to the particular point of erasure or non-erasure at the time when the notes were so examined. He admitted that his examination was not critical or careful, and that he could only give his best impression on the subject. But the signature with the erasure was a conspicuous feature of these notes, and the envelope, when taken from the safe, was apparently in the same condition as when it was placed there. The contents, too, were apparently the same. It contained other notes besides the nine in question. These others were notes of the former partner, Taylor,—notes which he, too, had given to Mr. Mellen, Sr., and which the accountant subsequently included in his account. The envelope also contained a memorandum or letterpress copy of all these notes,—the accountant's as well as Taylor's,—and this memorandum was in the handwriting of the accountant. These and other circumstances justified the conclusion that the nine notes in question had not been canceled at the time when the accountant took them out of the envelope after his father's death. The witness Ellis testified that the purpose which he and the accountant had when they found these particular notes was to make a critical examination thereof, and that it was always his impression, from the time he saw them taken out of the envelope, that the signature was not then erased; and, when he thus spoke of his impression, he undoubtedly meant that such was his best recollection. His memory was, it is true, somewhat weakened by time, but upon the whole the referee was justified—upon the entire evidence, and from all the surroundings—in the conclusion at which he arrived.

The only other question worthy of special consideration is that with regard to the exclusion of an interlocutory judgment in another action, in which a gift of these notes by Mr. Mellen, Sr., to his son, the present accountant, was found. This other action was in partition, and it was brought by Sarah E. Mellen, personally. The accountant, as a possible tenant by the curtesy, was made a party defendant, but he interposed no answer, and died before the trial. The action was not revived as to him. The contestant here, Banning, as executor, was also a party defendant. It thus appears that the litigation in which the determina-

tion referred to was made was not between the parties to the present proceeding, or their privies. There was no issue there between the accountant and the executor, Banning. The accountant did not appear in that action, and Banning, in his answer, set up no claim, as against him, with regard to these notes. The issue as to the notes was incidental to the main question there litigated, namely, whether the transfer to Mrs. Mellen of the accountant's interest in certain realty was with intent to hinder, delay, and defraud the estate of Mellen, Sr. The issue was between Mrs. Mellen, individually, and the executor, Banning. The issue here is between the accountant and Banning. Mrs. Mellen, as the accountant's administratrix, would not have been bound by the judgment in the partition suit, if it had been against her. She would only have been bound individually. It follows that Banning is not bound as against her, in her representative capacity. As there was no judgment between the accountant and Banning, and as there was no privity between the accountant and his wife, suing individually and in her own right, the interlocutory judgment was not binding in this proceeding, and it was properly rejected.

The other exceptions are of the most trivial character, and none of them were well taken. But, even if some of the referee's rulings upon questions with regard to the admission or rejection of evidence were questionable, it is clear, from the entire record, that the appellant was not prejudiced thereby, and consequently, under section 2545 of the Code of Civil Procedure, a reversal should not follow. Suyder v. Sherman, 88 N. Y. 656; Loder v. Whelpley, 111 N. Y. 247, 18 N. E. Rep. 874.

As we have considered the case upon the merits, it is not necessary to examine the various objections to the procedure raised by the respondent. The decree of the surrogate should therefore be affirmed, with costs to the respondent, payable out of the estate. All concur.